396 S.E.2d 203

**Birch HARE**

v.

**RANDOLPH COUNTY BOARD OF EDUCATION.**

No. 19438.

Supreme Court of Appeals of West Virginia.

July 25, 1990.

David W. Hart, Elkins, for Randolph County Bd. of Educ.

John Everett Roush, West Virginia School Service Personnel Ass'n, Charleston, for Birch Hare.

**PER CURIAM:**

The Randolph County Board of Education (Board) appeals from a final order of the Circuit Court of Kanawha County which reinstated Birch Hare to his position as a Randolph County school bus operator. The circuit court found that, as a matter of law, the Board had not followed the applicable provisions of West Virginia Board of Education Policy 5300(6)(a),[1] reversing a decision by a West Virginia Education Em-

---

1. West Virginia Board of Education Policy § 5300(6)(a) reads:

    "Every employee is entitled to know how well he is performing his job, and should be offered the opportunity of open and honest evaluation of his performance on a regular basis. Any decision concerning promotion, demotion, transfer or termination of employment should be based upon such evaluation, and not upon factors extraneous thereto. Every employee is entitled to the opportunity of improving his job performance, prior to the terminating or transferring of his services, and can only do so with assistance of regular evaluation."

    It was adopted as a legislative rule effective June 22, 1981, at 9 W.Va. C.S.R. § 126–141–2.2.f.1.

ployees Grievance Board hearing examiner.[2] On appeal, the Board asserts that it had evaluated Mr. Hare's work performance and had given him an opportunity to improve work deficiencies. We agree, and we reverse the circuit court's order.

Birch Hare had been employed by the Board as a full-time bus operator from the 1980–81 school term until the end of the 1987–88 school term. On May 24, 1988, the superintendent of Randolph County schools, in writing, notified Mr. Hare that he was being recommended for dismissal for incompetency, pursuant to authority granted under W.Va.Code, 18A–2–8 (1985).[3]

On May 3, 1988, while driving a school bus, Mr. Hare struck a parked truck, destroying two ladders and a ladder rack and failed to stop and wait at the scene of the accident.[4] He made no attempt to find the truck's owner, but continued on to the school bus garage to secure a spare bus.[5] Mr. Hare failed to report the preventable accident to his supervisor.[6] This was Mr. Hare's fourth preventable accident while operating a school bus.[7] We summarize

2. In note 1, in part, of *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 291, 387 S.E.2d 524, 526 (1989), we recognized:

"In 1988, the West Virginia Educational Employees Grievance Board was, by virtue of W.Va.Code, 29–6A–1, *et seq.* (1988), combined with the newly created State Employees Grievance Board to provide for a unified education and state employees grievance procedure. *See American Fed'n of State, County & Mun. Employees v. Civil Serv. Comm'n,* 181 W.Va. 8, 380 S.E.2d 43 (1988)."

3. W.Va.Code, 18A–2–8, provides:

"Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance or willful neglect of duty, but the charges shall be stated in writing served upon the employee within two days of presentation of said charges to the board. The employee so affected shall be given an opportunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to provisions of article twenty-nine [§ 18–29–1 et seq.], chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended."

4. Randolph County Schools implemented a written policy on November 24, 1986, that "anytime there is an accident, no matter how small, ... do not move the bus until [the director of transportation] arrives, unless ordered by authorities to move the bus to the side of the road."

5. Under W. Va.Code, 17C–4–4,

"[t]he driver of any vehicle which collides with any vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in the vehicle struck a written notice giving the name and address of the driver and of the owner of the vehicle doing the striking and a statement of the circumstances thereof."

An eyewitness to the accident told the truck owner, who went to the school bus garage and made a written statement about the accident.

6. In a written report to the Randolph County superintendent of schools two days after the accident, the director of transportation stated that Mr. Hare "has not informed me of the accident, which is in violation of West Virginia Transportation Regulations, page 16, No. 42."

West Virginia school transportation regulations, 9 W. Va. C.S.R. § 126–92–2 (1978), *Authority and Responsibility of County School Personnel In Providing School Transportation Services,* provide:

"42. The school bus operator shall make a verbal report immediately, and within twenty-four (24) hours, a written report to the proper school officials of any and all accidents, including those resulting in the slightest bodily injury and/or property damage in which his bus or passengers are involved. He shall make such additional written reports as are required by West Virginia Motor Vehicle Law."

The West Virginia Board of Education promulgated these regulations pursuant to general authority granted in W. Va.Code, 18–5–13(6), and the specific mandate in W. Va.Code, 17C–14–12(a), to "adopt and enforce regulations not inconsistent with [Chapter 17C] to govern the ... operation of all school buses used for transportation of school children...." Every county board of education, its officers and employees, and every person employed under contract by a county board of education shall be subject to said regulations. W. Va.Code, 17C–14–12(b), states, in part: "Any ... employee ... who violates any of said regulations ... shall be guilty of misconduct and subject to removal from ... employment."

7. A "preventable accident" is one where the driver is deemed to be negligent. *See* Grievance Board Hearing exhibit 5.C., "West Virginia School Bus Accident Report," and exhibits 6.g. and 6.h.

the hearing record about the other accidents.

In May, 1982, Mr. Hare hit a utility pole when the right front wheel of the school bus left the pavement, causing $6,000 damage to the bus. He was asked to take a physical exam, which found no physical or emotional problem.

In October, 1983, Mr. Hare hit a truck which was stopped to make a turn and caused $1,000 damage to the truck. He was issued a traffic citation for failure to control the bus. Mr. Hare received a written official reprimand from the assistant superintendent for Randolph County schools expressing his concern for the safety of the school children and advising Mr. Hare to adopt cautious driving habits. Mr. Hare was also informed that he should develop defensive driving techniques and maintain better control of students on his bus. Finally, he was advised that another accident could result in suspension or termination from employment.

In December, 1986, Mr. Hare received a traffic citation for running a red light and hitting a car which was entering the intersection. This accident resulted in a $25,000 settlement to the owners of the car who received personal injuries. As a result of this accident, Mr. Hare was suspended from his employment without pay for five days. In a written letter, he was informed that another avoidable accident would result in a recommendation for termination of employment. He did not contest the suspension.

It was in May, 1988, that Mr. Hare struck the parked truck which constituted his fourth accident.

After a hearing before the Board, it voted to terminate Mr. Hare's employment. He appealed to the Grievance Board for a Level IV hearing. The hearing examiner upheld Mr. Hare's dismissal from employment, finding that Mr. Hare had been warned in 1986 that another preventable accident could result in termination of his employment, and, that he had another accident subsequent to the written warning.

The circuit court reversed the hearing examiner's decision, accepting Mr. Hare's contention that a school board employee may not be discharged for incompetency which was "neither called to his attention nor given an improvement period *by evaluation procedure,* as provided in Board of Education Policy § 5300(6)(a)." (Emphasis of the circuit court). The court found that the Board must follow its policies and procedures. It stated that Mr. Hare had received acceptable annual evaluations during his entire employment period. The court ordered Mr. Hare reinstated to his former position, but found that the reinstatement should not entitle him to a regular bus route or operation of a school bus. The right to drive a bus was conditioned on his successful completion of some type of safety or driving improvement program to be provided or recommended by the state or county board of education.

■ We have recognized that termination of a school employee's employment for incompetency under W.Va.Code, 18A–2–8 must follow the procedures specified in Policy 5300(6)(a), as set forth in Syllabus Point 1 of *Mason County Board of Education v. State Superintendent of Schools,* 165 W.Va. 732, 274 S.E.2d 435 (1980):

> " 'Failure by any board of education to follow the evaluation procedure in West Virginia Board of Education Policy No. 5300(6)(a) prohibits such board from discharging, demoting, or transferring an employee for reasons having to do with prior misconduct or incompetency that has not been called to the attention of the employee through evaluation, and which is correctable.' Syl. pt. 3, *Trimboli v. Board of Education of the County of Wayne,* [163 W.Va. 1] 254 S.E.2d 561 (1979)."

Mr. Hare's complaint in this case is that the annual evaluation forms did not reflect the specific accidents and the information contained in the letters sent to him after each accident. It is not disputed that Mr. Hare received this information, but he argues that it cannot be considered as a part of the Policy 5300 evaluation process. He asserts that only the evaluation form can be considered. We decline to adopt such a

constrictive view of the Policy 5300 evaluation process.

In this case, after each accident, Mr. Hare's conduct was evaluated in writing. He was informed of the harm resulting from the accident, and the safety problems were described. Also included were suggested plans for improving his work performance, including taking a safe driving course. There were disciplinary warnings contained in the correspondence which were systematically applied. While this material was not noted on Mr. Hare's annual evaluations,[8] we do not find this to be a fatal defect. There was a substantial compliance with the evaluation procedures contained in Policy 5300(6)(a) by way of this specific correspondence, which was official and placed in his personnel file.

Consequently, we find that the trial court erred in overturning the hearing examiner's decision which upheld the termination of Mr. Hare. We spoke to this point in Syllabus Point 1 of *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989):

> "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong."

For the foregoing reasons, we reverse the order of the Circuit Court of Kanawha County.

Reversed.

---

**8.** After the 1986 accident and subsequent written notice that an additional preventable accident would result in termination of employment, the 1987 annual evaluation found Mr. Hare unsatisfactory in safety procedures.