443 S.E.2d 229

**WEST VIRGINIA DEPARTMENT OF NATURAL RESOURCES, Plaintiff Below, Appellees,**

v.

**Christine Mann MYERS, Defendant Below, Appellant.**

**No. 21538.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 19, 1994.

Decided March 28, 1994.

Shirley A. Skaggs, Asst. Atty. Gen., Charleston, WV, for appellee.

Kathryn K. Allen, West & Jones, Clarksburg, for appellant.

PER CURIAM:

This case is before the Court on the appeal of Christine Mann Myers from the July 23, 1992, order of the Circuit Court of Upshur County.

The appellant, Christine Myers, was employed by the Department of Natural Resources (DNR) as a conservation officer from 1979 until October 12, 1990. Apparently, in July, 1990, Ms. Myers advised her supervisor that she was pregnant and asked whether she could be given light duty and permitted to wear plain clothes during the last portion of her pregnancy. He refused. During her first pregnancy, Ms. Myers was not given light duty and was required to wear a uniform and carry a firearm through the eighth month of her pregnancy, when she took leave. By the time of the second pregnancy, she had accumulated approximately eighty days of sick and annual leave, which she then requested that she be allowed to take instead of light duty.

Ms. Myers does not dispute that the DNR has never changed job responsibilities to create a light duty position for a conservation officer in the past. She requested sick leave and annual leave, beginning August 19, 1990. She submitted sick leave forms, which were approved by her physician, indicating that she was unable to carry out her regular work

detail. Her superior accepted the leave forms, and she did not report to work from August 19, 1990, to September 19, 1990.

This appeal also involves an incident which occurred the prior year. On August 22, 1989, Ms. Myers had received a written reprimand from her superior for failing to appear for routine boat patrol. She explained that she had been requested to assist with a drug raid being carried out by the Lewis County Sheriff and that the Sheriff's Department had notified the DNR of her involvement with the Sheriff's raid. The DNR, claiming that she had not followed procedure, issued a letter of reprimand charging her with insubordination. Ms. Myers filed a grievance based upon the reprimand in her record.

The Lewis County Sheriff sent a letter to Colonel Hall, the chief of the law enforcement division of the DNR, on September 5, 1989, which stated that Ms. Myers had provided assistance at his request and asked that the letter be removed from her personnel file. The letter was not removed at this point. The grievance was scheduled for a Level IV hearing on September 7, 1990.

Ms. Myers met with Colonel Hall on August 7, 1990. After lunch, she alleges that he requested that she withdraw the grievance because it would cost the DNR a great deal of money. She refused, unless the letter was withdrawn from her file. Ms. Myers notified her union representative that Colonel Hall had approached her regarding the grievance. Mr. Maupin, the union representative, notified the Director of the DNR that Colonel Hall had attempted "through intimidation and improper ex-parte communication to coerce conservation officer Christine Mann Myers into withdrawing her pending grievance." On September 6, 1990, Ms. Myers was advised that the State had removed the letter of reprimand from her file, and the grievance was then dismissed.

Ms. Myers claims that during the period between August 7, 1990, when she met Colonel Hall, and September 27, 1990, the date she was ultimately terminated, Colonel Hall obtained, from her ex-husband, a copy of a confidential affidavit filed in a domestic proceeding pending in the Circuit Court of Lewis County. The affidavit erroneously reported that Ms. Myers intended to leave her job on August 19, 1990. Ms. Myers' lawyer later admitted that she made a mistake in preparing this affidavit and that Ms. Myers had no intention of quitting her job and was prepared to return to work following the birth of her second child. Thus, Colonel Hall wrote a letter to Ms. Myers dated September 7, 1990, advising her that, based on the contents of the affidavit and the fact that she was attending nursing classes at Fairmont State College, he presumed she was resigning from her position with the DNR and he was processing her resignation. On September 11, 1990, Ms. Myers responded to Colonel Hall in writing, stating that she had no intention of resigning her position. She also advised him that she was currently on maternity sick leave, granted to her by the DNR Law Enforcement Section, because the Department had not offered her light duty for the remaining term of her pregnancy. Ms. Myers does not dispute that the DNR had never changed job responsibilities to create light duty in the past. However, she does note that requested annual leave had never been refused to a conservation officer in the past, with three exceptions, none of which existed in her case.

After Ms. Myers' September 11, 1990, letter to Colonel Hall explaining that she was on maternity sick leave because no light duty position had been created, Colonel Hall wrote to Ms. Myers and advised her that a light duty position was available for the remainder of her pregnancy, effective September 22, 1990. This duty consisted of answering the telephone and radio work, and required Ms. Myers to be alone at night at French Creek. She also claims that, without her knowledge or consent, Colonel Hall had contacted her physician and inquired whether she could perform the light duty arranged. On September 24, 1990, her doctor responded that he would recommend that she be given a different job which would alleviate her migraines.

Colonel Hall met with Ms. Myers on September 20, 1990, at Fairmont State College and ordered her to report for duty on September 22, 1990. Sick leave was paid to Ms. Myers up to September 21, 1990, and the

Colonel disapproved any sick leave thereafter.

On September 21, Ms. Myers requested sick leave from her immediate supervisor, Captain Sayers. The request was denied. She advised Colonel Hall that she did not feel she was able to report to work on September 22 and requested sick or annual leave. Colonel Hall denied that request as well. She claims that DNR regulations provide that annual leave shall be granted at such times as will not materially affect the agency's efficient operations.

On September 22, 1990, Ms. Myers failed to show up for work. She claims that she attempted to call and notify her superiors that she was unable to report to work because she was experiencing false labor. However, she states she was unable to contact her immediate supervisor, Captain Sayers, to report as such. Thus, shortly thereafter, she was advised that she had been dismissed from her position because she had abandoned her job. On September 27, 1990, Colonel Hall sent the appellant a fifteen-day notice of dismissal, effective October 12, 1990. The appellant did not respond, in person or in writing, to the allegations contained in the notice of dismissal. However, on October 23, 1990, the appellant filed a Level IV grievance protesting her dismissal.

The appellant also complains that Colonel Hall, by letter dated September 21, 1990, sent a "vicious" letter to Judge Keadle alleging that Ms. Myers had knowingly and willfully submitted a false affidavit before the court. The affidavit in question was from a separate domestic case involving the family law master and included a statement to the effect that Ms. Myers intended to quit work on August 19, 1990. Ms. Myers asserts that the statement in question was erroneous, and her lawyer admitted that she failed to correct the error before filing the affidavit before the family law master. Colonel Hall obtained the affidavit from Ms. Myers' ex-husband.

In March 28, 1991, Sue Keller, Senior Hearing Examiner, granted the grievance. The conclusions of law noted the definition of reprisal and "that the appellant has shown by a preponderance of the evidence, that the chief administrator of the law enforcement section of the DNR had engaged in a series of retaliatory actions, culminating in her dismissal, immediately following an incident relating to a prior grievance which he (Colonel Hall) shortly thereafter resolved in the appellant's favor." By decision dated March 25, 1991, she ordered that the DNR reinstate the appellant to the position of conservation officer with all back pay and benefits to which she was entitled.

On April 29, 1991, the DNR filed a petition for appeal to the Circuit Court of Upshur County. The petition requested that the court reverse the decision of the West Virginia Education and State Employees Grievance Board pursuant to W.Va.Code § 29–6A–7 on the grounds that it was (a) contrary to law and contrary to rules, regulations, and written policies of the DNR; (b) in excess of statutory authority and jurisdiction of the Grievance Board; (c) in excess of the hearing examiner's statutory authority; (d) clearly wrong in view of the reliable, probative, and substantial evidence of the whole record; (e) arbitrary and capricious and characterized by the abuse of discretion or clearly unwarranted exercise of discretion; (f) made upon unlawful procedures; and (g) affected by other error of law. In a memorandum decision dated July 7, 1992, the circuit court held that the hearing examiner's decision was clearly wrong in view of the reliable, probative, and substantial evidence in the record. Thus, by order dated July 23, 1992, the Circuit Court of Upshur County reversed the Grievance Board and refused to reinstate the appellant to a position as conservation officer and award her back pay, because she abandoned her position pursuant to West Virginia Division of Personnel Rules and Regulations § 13.02. It is from this final ruling that Ms. Myers appeals.

West Virginia Code § 29–6A–1 et seq. (1993) provides the grievance procedures for state employees. West Virginia Code § 29–6A–7 discusses the reviewability of the hearings examiner's decision:

The decision of the hearing examiner shall be final upon the parties and shall be enforceable in circuit court: Provided, That either party or the state civil service commission may appeal to the circuit court

of the county in which the grievance occurred on the grounds that the hearing examiner's decision (1) was contrary to law or a lawfully adopted rule, regulation or written policy of the employer, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

■ The applicable standard of review in cases involving the State Grievance Board was discussed in *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989). That case involved an appeal of a final order of a hearing examiner for the West Virginia Educational Employees Grievance Board. In footnote 1, the Court noted that in 1988, the West Virginia Educational Grievance Board was combined with the newly created State Employees Grievance Board, and the judicial review provisions found in W.Va.Code § 29–6A–7 are substantially similar to those contained in W.Va.Code § 18–29–7. *Id.* 387 S.E.2d at 524, n. 1. Thus, syllabus point 1 of *Scalia* applies in this case even though it does not involve the Educational Employees Grievance Board: "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, et seq., (1985), and based upon findings of fact, should not be reversed unless clearly wrong." *Id.* at syl. pt. 1. In determining whether the hearing examiner was clearly wrong, the lower court was directed to examine "the reliable, probative and substantial evidence on the record as a whole." *Id.* 387 S.E.2d at 527. *See also Hyre v. Upshur County Board of Education,* 186 W.Va. 267, 412 S.E.2d 265 (1991); *Hare v. Randolph County Board of Education,* 183 W.Va. 436, 396 S.E.2d 203 (1990).

■ The DNR alleges that the hearing examiner's order exceeded her statutory authority. The circuit court found that the hearing examiner's order was against the weight of the credible evidence. We disagree and, for the reasons stated below, reverse in part and affirm in part the July 23, 1992, order of the Circuit Court of Upshur County.

■ In *Frank's Shoe Store v. West Virginia Human Rights Commission,* 179 W.Va. 53, 365 S.E.2d 251 (1986), this Court established what was necessary to make a prima facie case for an action of unlawful reprisal:

[T]he burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.

*Id.* at syl. pt. 4, in part.

■ An employer may rebut the presumption of retaliatory action by offering "credible evidence of legitimate nondiscriminatory reasons for its actions...." *Mace v. Pizza Hut, Inc.,* 180 W.Va. 469, 377 S.E.2d 461, 464 (1988); *see also Shepherdstown Volunteer Fire Department v. State ex rel. West Virginia Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983). Should the employer succeed in rebutting the presumption, the employee then has the opportunity to prove by a preponderance of the evidence that the reasons offered by the employer for discharge were merely a pretext for unlawful discrimination. *Mace,* 377 S.E.2d at 464.

The hearing examiner found that the appellant met her burden of proof and established a prima facie case of reprisal by showing that nineteen days after her union representative contacted the division director regarding Colonel Hall's conversation with her, in which he requested that she withdraw her grievance, he travelled to Weston for the purpose of procuring information from her former spouse. A week later, he advised her that he was processing her resignation, and two days after that, he changed her days off, which interfered with her college attendance. He also withdrew her previously approved

sick leave and refused to grant her annual leave at a time when she was suffering from false labor. Finally, she was dismissed from her position within a period of approximately six weeks after she had met with Colonel Hall regarding the prior grievance.

In response, the DNR offered a legitimate reason for the dismissal action. They state that the appellant abandoned her position when she failed to report to work on September 22 and 23, 1990. The appellant does not deny that she did not appear for work those days. She does state, however, that she called both Captain Sayers and Colonel Hall to explain about her false labor. They deny ever receiving such phone calls.

In this case, the hearing examiner concluded that Ms. Myers met her burden to show that the legitimate, nonretaliatory reason of the employer for dismissing her was merely a pretext for the unlawful discharge. In doing so, the hearing examiner pointed to the Colonel's inappropriate contact with the grievant's physician, his assignment of an evening shift during her third trimester of pregnancy, the sudden reversal on the decision to allow light duty, his decision to change her schedule so that she was unable to attend class, given his knowledge of her class schedule, and in light of the letter he wrote to Judge Keadle regarding Ms. Myers' "lack of credibility." Equally damaging is Colonel Hall's unusual methods of obtaining information, such as obtaining an affidavit from a case in which the DNR was not involved from the appellant's ex-husband.

In reversing the Grievance Board's decision, the circuit court reviewed the evidence of record and found that the hearing examiner's conclusion was against the reliable, credible, and probative evidence. The court found that the appellant's actions in failing to report for work after having her annual and sick leave withdrawn was the same as abandoning her position and thus, the DNR was correct in firing her. While we agree that the abandonment of a position may be a legitimate reason for termination of employment, the court's order does not consider the uncontroverted facts that the DNR had rarely refused annual and sick leave when requested. As to their statement that allowing Ms. Myers the time off would put the DNR in a severely short-handed position during hunting season, it failed to explain what job Colonel Hall thought an eight months pregnant woman could safely perform. Her late night job at French Creek was hardly crucial and could be performed by anyone. If that position had been offered when she first requested light duty, then its importance would have more credibility. As it is, Ms. Myers had requested and been granted her own sick and annual leave to use while she was off by her immediate supervisor, who apparently saw nothing wrong in allowing her to do so. She was fully entitled and, in fact, required to use that time for her maternity leave. The DNR's sudden desperate need for her services strikes this Court as odd.

Evidence admitted before the Grievance Board revealed that employees were required to use accumulated sick and annual leave during their pregnancies. West Virginia Code § 21-5D-4 permits a total of twelve weeks of unpaid family leave, following the exhaustion of all of the annual and personal leave, for the birth of a child. The West Virginia Division of Personnel Rules and Regulations § 16.04(f)(4) provides that accrued sick leave shall be granted for an incapacity due to pregnancy under the same conditions applying to any illness. Further evidence adduced at the hearing revealed that annual leave had been refused only on very specific occasions in the past. West Virginia Division of Personnel Rules and Regulations, § 16.03(c), provides that annual leave "shall be granted at such time as will not materially affect the agency's efficient operation." Clearly, there was no problem with the appellant taking leave time prior to Colonel Hall's discovery that she was on leave. His sudden withdrawal of that leave looks quite suspicious.

■ In syllabus point 2 of *Frank's Shoe Store, supra,* we held that "[d]iscrimination based upon pregnancy constitutes illegal sex discrimination under the West Virginia Human Rights Act, W.Va.Code, 5-11-9(a) [1981]." Given the evidence presented and the fact that Ms. Myers had worked uneventfully for the DNR for eleven years prior to this incident, there was sufficient evidence

for the hearing examiner to believe the DNR's actions were causally related to either her prior grievance or her pregnancy.

Consequently, we agree with the hearing examiner's conclusion that the appellant had shown by a preponderance of the evidence that the chief administrator of the law enforcement section of the DNR had engaged in a series of retaliatory actions, culminating in her dismissal, immediately following an incident relating to a prior grievance.[1] Under the standard of review set forth in *Scalia*, we cannot find that the hearing examiner was clearly wrong, in view of the probative, reliable, and substantial evidence on the record as a whole. We reverse the decision of the Circuit Court of Upshur County and hold that the appellant is entitled to the reinstatement of her job.

Further, the DNR's allegation that back pay is not permissible in this case is also erroneous. In *Mason County Board of Education v. State Superintendent of Schools*, 170 W.Va. 632, 295 S.E.2d 719 (1982), this Court determined that back pay was available in certain situations: "[I]n those cases where an employee has been wrongfully discharged out of malice, by which we mean that the discharging agency or official willfully and deliberately violated the employee's rights under circumstances where the agency or individual knew or with reasonable diligence should have known of the employee's rights, then the employee is entitled to a flat back pay award." *Id.* 295 S.E.2d at 725. The Court expressed the opinion that "the policy considerations against malicious discharge ... outweigh the policy considerations that favor protection of the constituent class receiving government services, and this rule should operate to discourage malicious discharges." *Id.* "Unless a wrongful discharge is malicious, the wrong-

fully discharged employee has a duty to mitigate damages by accepting similar employment to that contemplated by his or her contract if it is available in the local area, and the actual wages received, or the wages the employee could have received at comparable employment where it is locally available, will be deducted from any back pay award; however, the burden of raising the issue of mitigation is on the employer." *Id.* at syl. pt. 2.

In the case now before us, the evidence shows that the DNR knowingly terminated the appellant from her employment after withdrawing leave time she was obliged to use under W.Va.Code § 21–5D–4 for her pregnancy-related problems and subsequent maternity leave. The appellant had used her annual and sick leave during and after her first pregnancy, so the procedures related to pregnant employees was familiar to the DNR. There is sufficient evidence to show that the DNR deliberately violated her rights, and thus, she is entitled to a flat back pay award.[2]

However, the DNR also argues that back pay and interest on the back pay is inappropriate because the appellant was discharged for cause. The DNR points to *Orndorff v. West Virginia Department of Health*, 165 W.Va. 1, 267 S.E.2d 430 (1980), in which the Court stated that where the disciplined employee was not entirely without fault, the court can decline to award interest on a back pay award if there was good cause for the disciplinary action. *Id.* 267 S.E.2d at 434.

This Court subsequently interpreted *Orndorff* in *Fraley v. Civil Service Commission*, 177 W.Va. 729, 356 S.E.2d 483 (1987). Based upon the rule stated in *Orndorff*, the Court refused to grant interest on a back pay award to a civil service employee dismissed for "good cause." In *Fraley*, the employee

---

1. Reprisal is defined as "the retaliation of an employer or agent towards a grievant ... or any other participant in the grievance procedure either for an alleged injury itself or any lawful attempt to redress it." W.Va.Code § 29–6A–2(p).

2. Syllabus point 4 of *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990), states:

   Once a claimant establishes a prima facie case of discrimination and presents evidence on the issue of damages, the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant. The defendant may satisfy his burden only if he establishes that: (1) there were substantially equivalent positions which were available; and (2) the claimant failed to use reasonable care and diligence in seeking such positions.

   In this case, we do not reach the issue of mitigation.

was discharged because, as a classified civil service employee, he was prohibited from holding any other paid office. However, he was both the coroner for Hardy County and an employee of the Department of Highways. Upon review, the West Virginia Department of Highways erroneously failed to provide for procedural due process. Fraley was awarded back pay and benefits for the period between the date of his dismissal and the date of his hearing before the Civil Service Commission. However, he was denied an award of interest on the back pay because the dismissal action, although erroneous, was based upon good cause. *Id.* 356 S.E.2d at 488.

Based upon the interpretation of *Orndorff,* we agree that the appellant would not be entitled to interest upon the back pay. She failed to report for duty and failed to contact anyone on the day she was ordered to return from her leave. Regardless of the propriety of the withdrawal of the annual leave, it was improper to fail to appear for her assignment. The correct procedure would have been through the Grievance Board.

Consequently, we reverse the decision of the Circuit Court of Upshur County and hold that the appellant, Christine Mann Myers, be reinstated to her position as conservation officer with back pay. However, we affirm that portion of the circuit court's order which denied interest upon that back pay.

Affirmed in part; reversed in part.

NEELY, J., dissents and reserves the right to file a dissenting opinion.

NEELY, Justice, dissenting:

I dissent. As a matter of fact, the lower court's conclusions were correct. I reiterate the positions stated in my dissent to *Frank's Shoe Store v. Human Rights Commission,* 179 W.Va. 53 at 63–64, 365 S.E.2d at 261–62 (1986).