489 S.E.2d 787

**Karen Sue CONNER, Appellant,**

v.

**BARBOUR COUNTY BOARD OF EDUCATION, Appellee.**

No. 23882.

Supreme Court of Appeals of
West Virginia.

Submitted April 30, 1997.

Decided July 14, 1997.

John Everett Roush, Charleston, for Appellant.

Harry M. Rubenstein, F. Thomas Rubenstein, Kay, Casto, Chaney, Love & Wise, Morgantown, for Appellee.

PER CURIAM:

This is an appeal by Karen Sue Conner (hereinafter "Appellant") from a April 19, 1996, order of the Circuit Court of Barbour County terminating her employment as a bus operator for the Barbour County Board of Education (hereinafter "the Board"). The Appellant asserts that the lower court erred in terminating her employment. We affirm the decision of the lower court.

## I.

The Appellant was employed by the Board as a school bus operator from 1978 to January 1995. From 1985 to 1992, she was certified and employed as an instructor of bus operators. As such, she was provided with instructional programs dealing with accidents and emergencies. On December 12, 1994, while the Appellant was transporting forty-six elementary, middle school, and high school children home on her evening route, she collided with another vehicle on a one lane bridge. The road on which the accident occurred was narrow with steep banks on each side.

The Appellant stopped the bus and turned on the hazard flashers. She did not place reflective triangles on the road due to lack of room and her determination that the triangles were not required due to the peculiar circumstances of the accident scene. She asked the students if there were any injuries.[1] Upon learning that no one had been injured, she permitted the students to exit the bus and use a nearby phone to contact someone to pick them up. Some of the children went home with parents, two children attempted the eight-mile walk home, and the Appellant permitted three girls to ride home with a boyfriend. Fourteen children were transported home in one minivan. When the Superintendent and the Transportation Director arrived approximately thirty minutes after the accident, only four students remained at the accident scene.

Upon review of the Appellant's behavior, the Superintendent recommended dismissal of the Appellant based upon the following omissions:

1. Failure to locate warning device.

2. Failure to properly notify school officials.

3. Failure to request back up transportation.

4. Failure to secure proper releases from students re physical condition.

5. Permitting various students to exit the bus and leave the scene without knowledge of their destination and the person with whom they left.

On January 23, 1995, the Board voted to terminate the Appellant's employment.[2] On

---

1. Although the Appellant had not checked each individual child for injuries, she signed a release form for the Emergency Medical Squad indicating that no one had been injured. One child had bumped her head and missed school the next day due to that injury.

2. The Superintendent had apparently considered less severe discipline, such as suspension, but

May 17 and 18, 1995, evidentiary hearings were conducted before an administrative law judge with the West Virginia Education and State Employees Grievance Board (hereinafter "ALJ"). By order dated September 29, 1995, the ALJ found that the Board had proven the Appellant's failure to maintain proper control over the students and had permitted them to go home with persons other than their parents without permission slips and at a spot other than their designated bus stop. However, the ALJ reduced the penalty from termination to suspension without pay from January 23, 1995, through September 30, 1995.

The Appellant and the Board appealed to the lower court. In its April 19, 1996, order, the lower court affirmed the ALJ's findings of fact but reversed the determination regarding suspension. Instead, the lower court upheld the Board's original termination of the Appellant. The Appellant now appeals to this Court.

## II.

### STANDARD OF REVIEW

■ In syllabus point one of *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), we explained that "[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to *W.Va.Code*, 18–29–1, et seq. (1985), and based upon findings of fact, should not be reversed unless clearly wrong." *See also Hare v. Randolph County Bd. of Educ.*, 183 W.Va. 436, 396 S.E.2d 203 (1990). In the present case, the lower court affirmed the ALJ's findings of fact but reversed his determination regarding appropriate discipline by

reasoning that the ALJ's decision to simply suspend the Appellant was not supported by the factual findings and was therefore an abuse of discretion, in excess of her statutory authority and clearly wrong as a matter of law.[3]

West Virginia Code § 18–29–7 (1985), in pertinent part, provides:

The decision of the hearing examiner shall be final upon the parties and shall be enforceable in circuit court: Provided, That either party may appeal to the circuit court of the county in which the grievance occurred on the grounds that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

■ In *Martin v. Randolph County Board of Education*, 195 W.Va. 297, 465 S.E.2d 399 (1995), we clarified that we review appeals from the West Virginia Educational Employees Grievance Board under section 18–29–7. "The scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the hearing examiner." 195 W.Va. at 305, 465 S.E.2d at 406. Likewise, when this Court is called upon to review an ALJ's decision which was affirmed by the lower court, "[w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these

due to the serious concern for the safety of the children, the complaints of parents regarding the manner in which the accident was handled, and the Appellant's failure to adhere to emergency regulations of which she was aware through her prior training and employment as a driver. instructor, the Superintendent deemed dismissal the most appropriate remedy.

3. The ALJ had found the circumstances of the Appellant somewhat mitigated by the fact that her behavior differed very little from that of other drivers in prior situations. The ALJ thus deduced that the problem was not only that of this Appellant, but was a problem requiring sys-

tem-wide attention. The lower court determined that such rationale was inappropriate and should not be utilized to relieve the Appellant of complete accountability for her behavior. No testimony was presented regarding any other incident which involved this level of absence of child supervision and control, particularly the Appellant's opening of the bus door and allowing students to disembark where the accident did not warrant evacuation. Both the Superintendent and the Transportation Director testified that they would recommend dismissal if confronted with such a situation.

facts." *Id.* at 305, 465 S.E.2d at 406. However, "conclusions of law and application of law to the facts" are reviewed de novo. *Id.*

The Appellant contends that the Board did not adequately prove its assertion that the Appellant failed to maintain proper control of the students. With regard to the appropriate reaction to an emergency situation such as that encountered by the Appellant, the Board introduced testimony from other bus drivers regarding rules and regulations followed by the drivers. Pursuant to the rules and regulations [4] as presented, students are to remain on a bus unless a hazardous situation requires evacuation of the students. Moreover, the driver is responsible for the safety of the children. The Appellant permitted children to freely exit the bus and stand outside the bus with no supervision, and she was unaware that two girls began an eight-mile walk home and were later picked up by the Superintendent on his way to the accident scene.

The Appellant also contends that discharge was an excessive penalty for the charged violations. In *Rovello v. Lewis County Board of Education,* 181 W.Va. 122, 381 S.E.2d 237 (1989), we did consider the employee's length of service in determining the proper penalty. However, that factor was among the myriad of factors we analyzed in concluding that reinstatement was necessary for a principal who had been dismissed on grounds of immorality when he improperly sought reimbursement for certain expenses. 181 W.Va. at 126, 381 S.E.2d at 241. In arriving at such conclusion, we considered not only his length of service, but also the lack of a clear policy of expenses, the isolated nature of the offense, and the minimal harm created thereby. *Id.*

### III.

### RETALIATORY DISCHARGE

The Appellant also maintains that the Board failed to rebut the Appellant's prima

[4]. As a bus operator and prior instructor, the Appellant had been informed of proper procedures as delineated in the State of West Virginia School Transportation Regulations (hereinafter "regulations"). She had also been trained to properly respond to emergency situations according to the guidelines of the West Virginia School Bus Operator Instructional Program (hereinafter "instructional program"). The West Virginia Board of Education promulgated these regulations pursuant to the general authority granted in West Virginia Code § 18–5–13(6) and the specific instruction in West Virginia Code § 17C–14–12(a) to "adopt and enforce regulations not inconsistent with [Chapter 17C] to govern the ... operation of all school buses used for transportation of school children...." Section 17C–14–12(b), states, in pertinent part: "Any ... employee ... who violates any of said regulations ... shall be guilty of misconduct and subject to removal from ... employment." *See Hare v. Randolph County Bd. of Educ.,* 183 W.Va. 436, 396 S.E.2d 203 (1990).

Section XIII B of the regulations provides: Handling accidents and emergencies—In the event of an accident or emergency while transporting pupils, the bus operator's first responsibility is for the care of the pupil passengers. Carrying out such responsibility requires the performance of specific duties or tasks. The sequence of procedures will vary with the nature and seriousness of the emergency. The tasks include, but are not limited to, the following:
1. Stop immediately.
2. Turn off ignition.
3. Apply parking brake securely.
4. Activate 4–way hazard warning lights.
5. Evacuate passengers to a safer place, if necessary.
6. Administer first aid to persons suffering injuries that need attention, most seriously injured first.
7. Protect passengers, accident scene, and approaching motorists from further damage or accident by properly placing appropriate traffic warning devices.
8. Extinguish any existing fire.
9. Report to county transportation director/maintenance center by two-way-radio or nearest available phone. Identify location and assistance needed. If radio or phone is no available, enlist aid of someone at the scene, or nearby, to convey the information as quickly as possible.
10. Collect information pertinent to the accident, including distance measurements from available reference points.
11. Report, on proper form(s), all details of the accident.
12. Each county should establish procedures for handling situations in which the bus operator is incapacitated. These procedures should be communicated to pupil passengers.
Section F of the instructional program restates portions of the above and specifically requires the bus operator to "[k]eep all students in the bus unless hazards exist, such as: a. Conditions that might lead to a fire. b. Danger of further collision. c. Danger of drowning, bus overturning, etc." Section F(16) instructs the operator: "do not release any of your students to anyone unless told to do so by the school administration."

facie showing that her discharge was in retaliation for her history of filing grievances.[5] The ALJ found that the Board had rebutted the Appellant's contention that her discharge was retaliatory by advancing legitimate, non-retaliatory reasons for her dismissal, primarily involving the safety of the children entrusted to her care. Upon the presentation of that legitimate, non-retaliatory motive, the Appellant failed to demonstrate that the reasons offered for her discharge were merely a pretext for a retaliatory motive.

An employee may establish a prima facie case of retaliation,[6] but once the employer articulates a legitimate, non-discriminatory reason for its action, the burden returns to the employee. An employer rebuts the presumption of retaliatory action by offering "credible evidence of legitimate non-discriminatory reasons for its actions...." *Mace v. Pizza Hut, Inc.,* 180 W.Va. 469, 472, 377 S.E.2d 461, 464. "Should the employer succeed in rebutting the presumption, the employee then has the opportunity to prove by a preponderance of the evidence that the reasons offered by the employer for discharge were merely a pretext for unlawful discrimination." *West Virginia Dept. of Natural Resources v. Myers,* 191 W.Va. 72, 76, 443 S.E.2d 229, 233 (1994).

## IV.

### ENTITLEMENT TO IMPROVEMENT PERIOD

The Appellant argues that even if all of the charges had been adequately proven by the Board, she should have been given an opportunity to improve. In *Trimboli v. Board of Education of Wayne County,* 163 W.Va. 1, 254 S.E.2d 561 (1979), the Board

5. The Appellant's prior history of employment includes two days of suspension for fighting, four days of suspension for striking her immediate supervisor, a 30-day suspension for insubordination for directing inappropriate language toward her immediate supervisor. The Appellant has also filed approximately 14 grievances with the Board.

6. In syllabus point four of *Frank's Shoe Store v. West Virginia Human Rights Commission,* 179 W.Va. 53, 365 S.E.2d 251 (1986), we explained:
    In an action to redress an unlawful retaliatory discharge under the West Virginia Human

had transferred a director of federal programs for county schools, and the lower court had reinstated that individual to his position. *Id.* at 2, 254 S.E.2d at 562. We held that the employee had not been evaluated and given an opportunity to improve his job performance prior to transfer in violation of requirements of Policy 5300 of the West Virginia Board of Education. Policy 5300(6)(a) provides as follows:

(a) Every employee is entitled to know how well he is performing his job, and should be offered the opportunity of open and honest evaluation of his performance on a regular basis. Any decision concerning promotion, demotion, transfer or termination of employment should be based upon such evaluation, and not upon factors extraneous thereto. Every employee is entitled to the opportunity of improving his job performance prior to the terminating or transferring of his services, and can only do so with assistance of regular evaluation.

In syllabus point three of *Trimboli,* we held:

Failure by any board of education to follow the evaluation procedure in West Virginia Board of Education Policy No. 5300(6)(a) prohibits such board from discharging, demoting or transferring an employee for reasons having to do with prior misconduct or incompetency that has not been called to the attention of the employee through evaluations, and which is correctable.

In syllabus point four of *Mason County Board of Education v. State Superintendent of Schools,* 165 W.Va. 732, 274 S.E.2d 435 (1980), we explained:

Rights Act, *W.Va.Code,* 5–11–1, et seq., as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation), (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.

It is not the label given to conduct which determines whether 5300(6)(a) procedures must be followed but whether the conduct forming the basis of dismissal involves professional incompetency and whether it directly and substantially affects the system in a permanent, noncorrectable manner.

The Appellant asserts that her conduct was "correctable" and that she should consequently have been provided an improvement period. She claims that she simply needed to be trained regarding proper procedures to be utilized when an accident interrupts completion of the bus route. The Board, however, contends that the Appellant's omissions constitute behavior which is not correctable, within the meaning of *Trimboli,* and endangered the lives of the children on her bus. The ALJ specifically addressed Policy 5300 and determined that the Appellant compromised the safety of the children and that her actions were not correctable. The ALJ explained: "Respondent proved that Grievant failed to maintain control of her passengers, and that this compromised the safety of her passengers in a significant manner so that Policy 5300 is not applicable." Furthermore, the ALJ stated:

> Respondent proved that Grievant let students leave with persons other than parents in violation of the state regulation and county policy which requires a note signed by the parent and the principal before a child is allowed to depart the bus other then at his designated stop, an that this compromised the safety of her passengers in a significant manner so that Policy 5300 is not applicable.

Having considered the materials submitted and the arguments of counsel, we affirm the decision of the lower court.

Affirmed.