496 S.E.2d 444

STATE of West Virginia ex rel. Willie C. CATRON, Petitioner below, Appellant,

v.

RALEIGH COUNTY BOARD OF EDUCATION, Respondent below, Appellee.

No. 24084.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1997.

Decided Nov. 20, 1997.

Robert S. Baker, Beckley, for Appellant.

Erwin L. Conrad, Fayetteville, for Appellee.

PER CURIAM: [1]

This is an appeal from a May 17, 1995 order of the Circuit Court of Raleigh County which denied Willie C. Catron's petition for a writ of mandamus. Mr. Catron, a substitute teacher, sought to compel the Raleigh County Board of Education to pay him wages that he would have received had he been called in to replace a full-time teacher who had taken a medical leave of absence. We reverse the circuit court's order and remand this case for an evidentiary hearing to determine the amount of wages that Mr. Catron lost.

I.

Willie C. Catron ("Catron"), the petitioner below and appellant, was laid off from his job as a full-time mathematics teacher in the spring of 1992 due to a reduction in the work force in the Raleigh County school system. During the fall semester of 1992, Catron worked sporadically for the appellee, Raleigh County Board of Education ("Board"), as a substitute mathematics teacher. Catron was the only mathematics teacher on the Board's preferred recall list.

In October 1992, a mathematics teacher at Shady Spring Junior High School began an extended leave for medical reasons. The Board placed a business teacher in this vacant mathematics teaching position even though the teacher was not trained as a mathematics teacher.[2]

After learning that there had been a full-time opening for a mathematics teacher, Catron had an informal meeting with Dr. Emily Meadows, who was then the Director of Personnel for Raleigh County Schools. During this meeting, Dr. Meadows confirmed that a mathematics position had opened and that the position had been filled by another substitute teacher who was not certified to teach mathematics. Catron stated that he wished to file a grievance, and he was provided a grievance form by Dr. Meadows and given a "grievance control number." The record is unclear as to what Dr. Meadows told Catron to do with the form, but Catron believed he was to file the form with the principal at Shady Spring Junior High School.

Within ten days of this informal meeting with Dr. Meadows, Catron mailed his completed grievance form to the principal of the Shady Spring Junior High School. Neither the principal nor the Board responded to Catron's grievance. Two years after the filing of the grievance, Catron delivered a letter to Dr. Meadows, claiming that the Board was in default for failing to respond to his grievance within a timely manner. The Board denied that it was in default and refused to pay any additional salary which may have been owed to Catron for the fall of 1992. A petition for a writ of mandamus was filed with the Circuit Court of Raleigh County, which petition was subsequently denied. This appeal followed.

II.

■ The standard of appellate review of a circuit court's decision regarding the extraor-

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) (*"Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta....* Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.")

2. Catron was placed in this position at the beginning of the second semester, January 27, 1993, and held the position until the end of the school year.

dinary writ of mandamus is *de novo.* Syllabus Point 1, *Staten v. Dean,* 195 W.Va. 57, 464 S.E.2d 576 (1995).

■ The main issue in this case is the "default" provision set forth in *W.Va.Code,* 18–29–3(a) [1992].[3] The grievance procedure statutes provide that a grievant "shall schedule a conference with ... [his] immediate supervisor to discuss the nature of the grievance...." *W.Va.Code,* 18–29–4(a) [1992]. Catron argues that he had the conference with the only immediate supervisor of whom he was aware, the director of personnel, as required by the grievance procedure, and that he followed up on this conference with a written grievance filed with the principal of the school where the act being aggrieved occurred.[4] *W.Va.Code,* 18–29–2(g) [1992] defines "immediate supervisor" as "that person next in rank above the grievant possessing a degree of administrative authority and designated as such in the employee's contract, if any."

In response to Catron's position, the Board argues that Dr. Meadows was not Catron's immediate supervisor; the Board also contends that Catron should have sent his grievance form to the principal where he was then working as a substitute teacher, and not the principal of Shady Spring Junior High School, the school with the open position.

We find the Board's argument unpersuasive. "The legislative intent expressed in *W.Va.Code,* 18–29–1 (1985), is to provide a simple, expeditious and fair process for resolving problems." Syllabus Point 3, *Spahr v. Preston County Board of Education,* 182 W.Va. 726, 391 S.E.2d 739 (1990). *See also* Syllabus Point 1, *Hale v. Mingo County Board of Education,* 199 W.Va. 387, 484 S.E.2d 640 (1997); *Duruttya v. Board of Education of County of Mingo,* 181 W.Va. 203, 205, 382 S.E.2d 40, 42 (1989). If we were to adopt the Board's argument, a grievant who is a substitute teacher and who is assigned to work at various schools for short periods of time might never have an "immediate supervisor" long enough at any school to follow through with the grievance procedures.

In filing his grievance, Catron attempted in good faith to follow the required procedures as they fit his circumstances and as directed by the director of personnel. As a substitute teacher, Catron met with the director of personnel, the one supervisor who was a constant in circumstances in which Catron was working at a different school every few days. Following this meeting, Catron filed his grievance with the principal of the school where the event that gave rise to his complaint occurred and in accordance with the direction of the personnel director.

■ There was no evidence presented by the Board showing that Catron performed these actions in bad faith, nor did the Board provide any explanation as to why it failed to

---

3. *W.Va.Code,* 18–29–3(a) [1992] states, in part:

A grievance must be filed within the times specified in section four [§ 18–29–4] of this article and shall be processed as rapidly as possible. The number of days indicated at each level specified in section four of this article shall be considered as the maximum number of days allowed and, if a decision is not rendered at any level within the prescribed time limits, the grievant may appeal to the next level: Provided, That the specified time limits may be extended by mutual written agreement.... If a grievance evaluator required to respond to a grievance at any level fails to make a required response in the time limits required in this article, unless prevented from doing so directly as a result of sickness or illness, the grievant shall prevail by default....

4. *W.Va.Code,* 18–29–4(a) [1992] states, in part:

(1) Before a grievance is filled and within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date on which the event became known to the grievant or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, the grievant or the designated representative shall schedule a conference with the immediate supervisor to discuss the nature of the grievance and the action, redress or other remedy sought....

(2) The immediate supervisor shall respond to the grievance within ten days of the conference.

(3) Within ten days of receipt of the response from the immediate supervisor following the informal conference, a written grievance may be filed with said supervisor by the grievant or the designated representative on a form furnished by the employer or agent.

(4) The immediate supervisor shall state the decision to such filed grievance within five days after the grievance is filed.

respond to Catron's grievance for two years. Also, Catron was provided a grievance control number by Dr. Meadows, presumably so the Board could monitor this particular grievance. "In the absence of any evidence of bad faith, a grievant who demonstrates substantial compliance with the filing provisions contained in W.Va.Code §§ 18A–2–8 and 18–29–1, *et seq.* (1988) is entitled to the requested hearing." Syllabus Point 2, *Duruttya v. Board of Education of County of Mingo,* 181 W.Va. 203, 382 S.E.2d 40 (1989): *See also* Syllabus Point 2, *Hale v. Mingo County Board of Education,* 199 W.Va. 387, 484 S.E.2d 640 (1997). Further, in *Duruttya* the grievant filed his Level 4 grievance with the local board of education rather than the grievance board as was required, and this Court held that the grievant had substantially complied with the filing proceedings and was entitled to his hearing. In the instant case we find that Catron substantially complied with the grievance procedures; the Board was, therefore, required to respond to his complaint, and it failed to do so within the time limits set out in *W.Va.Code,* 18–29–1, *et seq.*

■ We recently stated in Syllabus Point 3 of *Hanlon v. Logan County Board of Education and Tim Murphy,* 201 W.Va. 305, 496 S.E.2d 447 (1997) that:

> W.Va.Code § 18–29–3(a) (1992) (Repl. Vol.1994) makes mandatory the time periods within which grievances by educational employees must be filed, heard, and decided. If a grievance evaluator does not comply with the hearing and decision time periods, and his/her inaction does not come within one of the enumerated statutory exceptions, "the grievant shall prevail by default."

In conclusion, since Mr. Catron substantially complied with the grievance procedure he was entitled to have this matter addressed by the Board. Since the Board failed to comply with the time requirements set out in *W.Va.Code,* 18–29–3 [1992], we find that Mr. Catron was entitled to default judgment against the Board and that the Circuit Court of Raleigh County erred in denying the appellant's request for a writ of mandamus.

Accordingly, we reverse the circuit court's May 17, 1995 order, and remand this case to the circuit court for an evidentiary hearing to determine the amount of wages owed to Mr. Catron.

Reversed and remanded.