569 S.E.2d 89

Michael BUTCHER, Petitioner Below, Appellant,

v.

Joe E. MILLER, Commissioner, West Virginia Division of Motor Vehicles, Respondent Below, Appellee.

No. 30251.

Supreme Court of Appeals of West Virginia.

Submitted May 21, 2002.

Decided June 7, 2002.

Concurring Opinion of Justice Albright June 11, 2002.

Thomas T. Madden, III, Glen Dale, West Virginia, for appellant.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, West Virginia, for respondent.

PER CURIAM.

This appeal was filed by Michael Butcher, appellant/petitioner below (hereinafter referred to as "Mr. Butcher"), from a ruling by the Circuit Court of Wetzel County affirming an administrative decision to suspend Mr. Butcher's driver's license. Mr. Butcher's driver's license was suspended by Joe E. Miller, Commissioner of the West Virginia Division of Motor Vehicles, appellee/respondent below (hereinafter "the Commissioner"), as a result of Mr. Butcher's refusal to take a designated chemical breath test to determine whether he was driving while impaired. Mr. Butcher contends that he was not properly informed that his driving license would be suspended should he refuse to take the designated chemical breath test. After reviewing the briefs and record in this case and listening to oral arguments, we reverse the circuit court's order.

## I.

### FACTUAL AND PROCEDURAL HISTORY

During the late evening hours of December 14, 1996, officer S.G. Kastigar, a deputy sheriff of Wetzel County, stopped a vehicle driven by Mr. Butcher. Deputy Kastigar stopped the car because Mr. Butcher was driving, at night, without headlights. During the stop, deputy Kastigar noticed signs that indicated Mr. Butcher had been drinking. Deputy Kastigar administered three field sobriety tests to Mr. Butcher. He failed all three tests. When deputy Kastigar asked Mr. Butcher to take a chemical breath test, he refused. Deputy Kastigar then read to Mr. Butcher a standard implied consent statement, thereby informing him that should he refuse to take the chemical breath test his driver's license "may" be suspended for a period of at least a year and up to life. Nevertheless, Mr. Butcher again refused to take the chemical breath test. Deputy Kastigar subsequently arrested Mr. Butcher for second offense driving under the influence.

After the arrest, deputy Kastigar forwarded to the Commissioner a report indicating Mr. Butcher had been arrested for driving under the influence. The report also stated that he refused to take a chemical breath test. On December 27, 1996, the Commissioner issued an order notifying Mr. Butcher that his driver's license was revoked because of his refusal to take the chemical breath test. The order informed Mr. Butcher that he was entitled to have an administrative hearing to contest the revocation. Mr. Butcher contested the revocation. A hearing was held on April 8, 1997. Following the

hearing, the Commissioner found that the evidence established that Mr. Butcher had refused the chemical breath test. Consequently, the Commissioner issued a final order on December 2, 1997, revoking Mr. Butcher's driver's license for 10 years.

On December 30, 1997, Mr. Butcher appealed the Commissioner's final order to the circuit court. On June 30, 2000, the circuit court filed an order affirming the Commissioner's final order. Mr. Butcher filed a motion for reconsideration on July 6, 2000.[1] The circuit court filed an order on June 6, 2001, denying the motion for reconsideration. Thereafter, this appeal was filed.

## II.

### STANDARD OF REVIEW

■ The issue presented in this case requires an analysis of our DUI statutes. We have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Moreover, "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syl. pt. 1, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Prot.*, 191 W.Va. 134, 443 S.E.2d 602 (1994).

## III.

### DISCUSSION

■ Mr. Butcher contends that deputy Kastigar informed him that his driver's license "may" be suspended for refusing to take the chemical breath test. Mr. Butcher asserts that this warning was erroneous because under W.Va.Code § 17C–5–7(a) (2000), he should have been informed that the revocation of his driver's license for refusing to take the chemical breath test was mandatory. This Court has held that "[w]hen interpreting a legislatively created law, we typically afford the statute a construction that is consistent with the Legislature's intent." *Coordinating Council for Indep. Living, Inc. v. Palmer*, 209 W.Va. 274, 281, 546 S.E.2d 454, 461 (2001). *See also* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). We have also indicated that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). However, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992).

The pertinent language in W.Va.Code § 17C–5–7(a) provides that an officer attempting to perform a chemical breath test must inform the driver "that his refusal to submit to the secondary test finally designated *will* result in the revocation of his license to operate a motor vehicle in this state for a period of at least one year and up to life." [2] (Emphasis added.)

---

1. The appeal in this case is timely. Mr. Butcher filed his motion for reconsideration within ten days of the filing of the circuit court's order. *See* Syl. pt. 7, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) ("A motion for reconsideration filed within ten days of judgment being entered suspends the finality of the judgment and makes the judgment unripe for appeal. When the time for appeal is so extended, its full length begins to run from the date of entry of the order disposing of the motion.").

2. W.Va.Code § 17C–5–7(a) (2000) states in full:
   If any person under arrest as specified in section four of this article refuses to submit to any secondary chemical test, the tests shall not be given: Provided, That prior to such refusal, the

person is given a written statement advising him that his refusal to submit to the secondary test finally designated will result in the revocation of his license to operate a motor vehicle in this state for a period of at least one year and up to life. If a person initially refuses to submit to the designated secondary chemical test after being informed in writing of the consequences of such refusal, he shall be informed orally and in writing that after fifteen minutes said refusal shall be deemed to be final and the arresting officer shall after said period of time expires have no further duty to provide the person with an opportunity to take the secondary test. The officer shall within forty-eight hours of such refusal, sign and submit to the commissioner of motor vehicles a written statement of the officer that (1) he had reason-

Mr. Butcher argues that the word "will," as used in W.Va.Code § 17C–5–7(a), implies a definite suspension. Therefore, he was incorrectly advised by deputy Kastigar's use of the word "may," as "may" implies a discretionary suspension. Several cases from other jurisdictions have been cited by Mr. Butcher as support for his position. For example, in *State v. Huber*, 540 N.E.2d 140 (Ind.App.Ct.1989), the defendant refused to take a chemical breath test after the arresting officer warned him that his driver's license "may" be suspended. The defendant's driver's license was suspended; however, a trial court ordered the license restored because the arresting officer failed to use the word "will" when advising the defendant, as required by statute, regarding the suspension of his license. The Indiana Court of Appeals upheld the trial court's decision. In doing so, the court stated: "The phrase 'may be suspended' connotes discretionary action. Thus the advisement failed to convey the strong likelihood that suspension of driving privileges would follow Huber's refusal to submit to a breathalyser test." *Huber*, 540 N.E.2d at 142. *See also Graves v. Commonwealth*, 112 Pa.Cmwlth. 390, 535 A.2d 707 (Pa.Cmwlth.1988) (reversing suspension because officer used the word "could" instead of "will"); *Mairs v. Department of Licensing*, 70 Wash.App. 541, 854 P.2d 665 (Wash. Ct.App.1993) (reversing suspension because officer used the word "probably" instead of "will"); *Welch v. State*, 13 Wash.App. 591, 536 P.2d 172 (Wash.Ct.App.1975) (reversing suspension because officer used the word "could" instead of "will").

Conversely, the Commissioner argues that deputy Kastigar's warning "substantial-

able grounds to believe such person had been driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (2) such person was lawfully placed under arrest for an offense relating to driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (3) such person refused to submit to the secondary chemical test finally designated in the manner provided in section four of this article; and (4) such person was given a written statement advising him that his license to operate a motor vehicle in this state would be revoked for a period of at least one year and up to life if he refused to submit to the secondary test finally designated in the manner provided in section four of this article. The signing of the statement required to be signed by this section shall constitute an oath or affirmation by the person signing such statement that the statements contained therein are true and that any copy filed is a true copy. Such statement shall contain upon its face a warning to the officer signing that to willfully sign a statement containing false information concerning any matter or thing, material, or not material, is false swearing and is a misdemeanor. Upon receiving the statement the commissioner shall make and enter an order revoking such person's license to operate a motor vehicle in this state for the period prescribed by this section.

For the first refusal to submit to the designated secondary chemical test, the commissioner shall make and enter an order revoking such person's license to operate a motor vehicle in this state for a period of one year. If the commissioner has previously revoked the person's license under the provisions of this section, the commissioner shall, for the refusal to submit to the designated secondary chemical test, make and enter an order revoking such person's license to operate a motor vehicle in this state for a period of ten years: Provided, That the license may be reissued in five years in accordance with the provisions of section three, article five-a of this chapter. If the commissioner has previously revoked the person's license more than once under the provisions of this section, the commissioner shall, for the refusal to submit to the designated secondary chemical test, make and enter an order revoking such person's license to operate a motor vehicle in this state for a period of life: Provided, That the license may be reissued in ten years in accordance with the provisions of section three, article five-a of this chapter. A copy of each such order shall be forwarded to such person by registered or certified mail, return receipt requested, and shall contain the reasons for the revocation and shall specify the revocation period imposed pursuant to this section. No such revocation shall become effective until ten days after receipt of the copy of such order. Any person who is unconscious or who is otherwise in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn his consent for a test of his blood, breath or urine as provided in section four of this article and the test may be administered although such person is not informed that his failure to submit to the test will result in the revocation of his license to operate a motor vehicle in this state for the period provided for in this section.

A revocation hereunder shall run concurrently with the period of any suspension or revocation imposed in accordance with other provisions of this code and growing out of the same incident which gave rise to the arrest for driving a motor vehicle while under the influence of alcohol, controlled substances or drugs and the subsequent refusal to undergo the test finally designated in accordance with the provisions of section four of this article.

ly" complied with the requirements of the statute and therefore the suspension of Mr. Butcher's driving license should not be disturbed.[3] A few cases were cited by the Commissioner to support its "substantial" compliance argument. For example, in *Commonwealth Dep't of Pub. Safety v. Tuemler*, 526 S.W.2d 305 (1975), a driver had his license suspended for refusing to take a breathalyser test.[4] The driver argued that the arresting officer informed him that "chances" were he would lose his license for refusing to take the test. The driver contended that this warning was misleading, because suspension was automatic. The appellate court ruled that the warning "substantially apprised [the driver] of the consequences of refusing to take the test." *Tuemler*, 526 S.W.2d at 306. The appellate court also noted that "revocation is not necessarily 'automatic,' but is subject to an administrative hearing[.]" *Id.* The appellate court reinstated the suspension.

In another case cited by the Commissioner, *In re Olien*, 378 N.W.2d 262 (S.D.1985), a driver had his license revoked after refusing a blood test. The driver contended on appeal that the officer misled him by stating that refusal to take the blood test "can" result in revocation of his license. The applicable statute required warning that a license revocation "shall" be imposed. The Supreme Court of South Dakota acknowledged that the statute was not literally complied with by the arresting officer. However, the court affirmed the revocation after finding "the officer's advice substantially complied with [the statute.]" *Olien*, 378 N.W.2d at 264.

We are not persuaded by the "substantial" compliance authorities cited by the Commissioner. The pertinent language of W.Va. Code § 17C–5–7(a) is clear and unambiguous. "[A] statute which is clear and unambiguous should be applied by the courts and not construed or interpreted." *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 517, 207 S.E.2d 897, 921 (1974) (citation omitted). Under the statute, an officer making a DUI arrest must inform the arrestee

that a refusal to submit to a chemical breath test "will" result in a license suspension.

Here, Mr. Butcher was never informed that his license "will" be suspended for refusing to take the chemical breath test. Instead, Mr. Butcher was erroneously told that his license "may" be suspended. Our cases have held that "[t]he word 'may' generally ... connotes discretion." *State v. Hedrick*, 204 W.Va. 547, 552, 514 S.E.2d 397, 402 (1999) (citations omitted). No discretion existed. Mr. Butcher's license was automatically suspended when the Commissioner received the report from deputy Kastigar. We are unable to determine from the record what course Mr. Butcher would have taken had he been properly advised of the consequences of his refusal to take the chemical breath test. As Mr. Butcher was unable to make an intelligent decision because of the erroneous warning given to him, we reverse the circuit court's order.

## IV.

## CONCLUSION

Mr. Butcher's driver's license was suspended as a result of his being given an inaccurate and misleading warning regarding the consequences of his refusal to take a chemical breath test. Therefore, we reverse the circuit court's affirmance of the suspension. We further order that Mr. Butcher's driver's license be restored. .

Reversed.

DAVIS, Chief Judge, dissenting.

The Commissioner of the West Virginia Division of Motor Vehicles (hereinafter referred to as the "Commissioner") suspended the driver's license of Michael Butcher, after conducting a hearing in which it was determined that Mr. Butcher unjustifiably refused to take a chemical breath test. The circuit court affirmed the suspension. This Court was asked to determine whether Mr. Butcher was prejudiced by deputy S.G. Kastigar's use

---

**3.** The Commissioner's brief indicates that it has revised its implied consent statement to now require use of the phrase "will be suspended."

**4.** On appeal to a trial court, the suspension was rescinded. The State appealed to the higher court.

of the word "may" instead of the word "will," when the officer advised Mr. Butcher of the consequences of refusing to take a chemical breath test. The majority opinion has determined that the technical violation in the use of the word "may" required Mr. Butcher's driver's license to be reinstated. I believe the majority decision represents "a classic example of placing form over substance, a procedure historically criticized and routinely rejected by this Court." *Holstein v. Norandex, Inc.*, 194 W.Va. 727, 729 n. 2, 461 S.E.2d 473, 475 n. 2 (1995). Therefore, I dissent.

Pursuant to W.Va.Code § 17C–5–7(a) (1986) (Repl.Vol.2000), an officer attempting to perform a chemical breath test must inform the driver "that his refusal to submit to the secondary test finally designated *will* result in the revocation of his license to operate a motor vehicle in this state for a period of at least one year and up to life." (Emphasis added.) It is undisputed that deputy Kastigar informed Mr. Butcher that if he refused to submit to a chemical breath test, his driver's license "may" be suspended. The Commissioner argued that deputy Kastigar's warning "substantially complied" with the requirements of the statute. Therefore, the suspension of Mr. Butcher's driver's license should not be disturbed. I agree with the Commissioner.

I believe the majority opinion has "[i]gnor[ed] the concept of 'substantial compliance[,]' which we have applied so often in the past, [and that] the majority blindly followed the technical letter of the law and failed to uphold the spirit of the law, thereby allowing an injustice." *Brady v. Hechler*, 176 W.Va. 570, 574, 346 S.E.2d 546, 551 (1986) (Brotherton, J., dissenting). *See also State ex rel. Catron v. Raleigh County Bd. of Educ.*, 201 W.Va. 302, 496 S.E.2d 444 (1997) (per curiam) (finding substantial compliance in filing grievance); *Powderidge Unit Owners Assoc. v. Highland Props., Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996) (recognizing that substantial compliance with Rule 56(f), rather than strict adherence to its proscriptions, may suffice); *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996) (finding substantial compliance with publication requirements); *Mahmoodian v. United Hosp.*

*Ctr., Inc.*, 185 W.Va. 59, 404 S.E.2d 750 (1991) (finding substantial compliance with rules for revoking physician's medical staff appointment privileges); *Hare v. Randolph County Bd. of Educ.*, 183 W.Va. 436, 396 S.E.2d 203 (1990) (per curiam) (finding substantial compliance with termination procedure); *Duruttya v. Board of Educ. of County of Mingo*, 181 W.Va. 203, 382 S.E.2d 40 (1989) (finding substantial compliance in seeking grievance hearing); *Vosberg v. Civil Serv. Comm'n of West Virginia*, 166 W.Va. 488, 275 S.E.2d 640 (1981) (holding that violation of grievance procedure by employer was merely technical and that there was substantial compliance with the procedure).

Moreover, two recent decisions by this Court dictated the analysis that should have been used, as well as the outcome of the instant case. First, in *State v. Valentine*, 208 W.Va. 513, 541 S.E.2d 603 (2000), we refused to disturb a criminal conviction even though there was technical noncompliance by the trial court with all the requirements of Rule 11 of the West Virginia Rules of Criminal Procedure. The defendant in *Valentine* entered a guilty plea to voluntary manslaughter. Subsequent to sentencing, the defendant sought to have the guilty plea set aside because the trial court failed to advise him that he could not withdraw his plea should the court impose a sentence in excess of the term proposed in his plea agreement. We acknowledged in *Valentine* that, under Rule 11(e)(2), it is required that "the court *shall* advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea." (Emphasis added). In spite of the "mandatory" requirement of Rule 11(e)(2), this Court "refuse[d] to exalt form over substance in Rule 11 hearings." *Valentine*, 208 W.Va. at 517, 541 S.E.2d at 607. In *Valentine*, we concluded that no evidence existed to prove that the defendant was under any false belief that he could withdraw his plea were he to be sentenced to more than the term recommended in the plea agreement. Consequently, we found the technical violation of Rule 11(e)(2) to be with-

out prejudice.[1]

Second, the decision in *In re Burks*, 206 W.Va. 429, 525 S.E.2d 310 (1999), was also dispositive of the analysis and outcome of the instant case. In *Burks*, the Commissioner entered a final order revoking the appellee's driver's license after he was arrested for driving under the influence. However, the circuit court reversed the Commissioner's order because the arresting officer did not mail the "Statement of Arresting Officer" to the Commissioner within forty eight hours of the appellee's arrest as required by statute. The Commissioner appealed the reversal of its order. This Court made two critical observations in order to resolve the case in favor of the Commissioner. First, we recognized "that the 48-hour reporting duty in W.Va. Code § 17C–5A–1(b) [1994] is directed to and imposed on the arresting officer, and not on the [Commissioner]." *Burks*, 206 W.Va. at 432, 525 S.E.2d at 313. Second, we noted that other decisions by the Court have held "that technical and nonprejudicial noncompliance with reporting time requirements that are imposed on a law enforcement officer was not a jurisdictional impediment to the [Commissioner] taking action regarding a license suspension." *Id.* (*citing Coll v. Cline*, 202 W.Va. 599, 505 S.E.2d 662 (1998), and *Dolin v. Roberts*, 173 W.Va. 443, 317 S.E.2d 802 (1984)). We ultimately held in syllabus point 1 of *Burks* that:

> A law enforcement officer's failure to strictly comply with the DUI arrest reporting time requirements of W.Va.Code § 17C–5A–1(b) [1994] is not a bar or impediment to the commissioner of the Division of Motor Vehicles taking administrative action based on the arrest report, unless there is actual prejudice to the driver as a result of such failure.

In both *Valentine* and *Burks*, we refused to allow noncompliance with technical legal requirements to overturn the rulings. In each case we determined there was no prejudice to the complaining party by the failure

of officials to strictly comply with the law. As a result of finding no prejudice, we refused to allow the technical violations to reverse the lower rulings. Here, the majority opinion completely disregarded this Court's prior analysis and its prior decisions.

I agree with Mr. Butcher that deputy Kastigar should have used the word "will" during the reading of the license revocation warning. However, for two specific reasons, I do not believe that omission of the word "will" was prejudicial. First, the record failed to disclose that Mr. Butcher would have agreed to take the chemical breath test regardless of the nature of the warning given. It appears that Mr. Butcher, who had a previous DUI arrest, had no intention of taking the chemical breath test. Deputy Kastigar testified that Mr. Butcher stated that he would not take the test because he was previously advised that he should refuse to take the test. Therefore, it is absolutely clear from the record that even had deputy Kastigar used the word "will," Mr. Butcher would, nevertheless, have refused to take the test. ·

The second reason I find no prejudice involves the practical impact of the statutory warning. My examination of W.Va.Code § 17C–5–7(a) reveals no legislative intent that the warning required to be given was intended to convey to an arrestee that in *all* cases an absolute and unchallengeable suspension would result. Why? An initial suspension may be challenged. W.Va.Code § 17C–5A–2(a) provides that "[u]pon the written request of a person whose license to operate a motor vehicle in this state has been ... suspended ..., the commissioner of motor vehicles shall stay the imposition of the period of ... suspension and afford the person an opportunity to be heard." During the aforementioned hearing, a person whose license has been suspended *may offer any exculpatory evidence for refusing to take the*

---

1. *See also* Syl. pt. 7, in part, *State v. Redden*, 199 W.Va. 660, 487 S.E.2d 318 (1997) ("In a circuit court proceeding, was a criminal defendant's jury trial waiver is personal, knowing, intelligent, and voluntary as reflected in an on-the-record statement in open court, the failure to obtain a written waiver signed by the defendant does not in itself make the jury trial waiver invalid, despite the technical 'writing' requirement of Rule 23(a) of the West Virginia Rules of Criminal Procedure.").

*chemical breath test.*[2]

Because an initial suspension may be challenged, I believe the Legislature chose to use the word "will" in W.Va.Code § 17C–5–7(a), as it relates to the suspension warning. Importantly, the Legislature in this context chose not to use the word "shall."[3] Yet, in other parts of W.Va.Code § 17C–5–7(a), the legislature used the word "shall" seventeen times. Therefore, I conclude that it was no accident that the legislature used the precise word "will" instead of "shall" in W.Va.Code § 17C–5–7(a). I believe the word "will" was used in W.Va.Code § 17C–5–7(a) because an initial suspension can be challenged.

For the reasons set forth, I dissent. I am authorized to state that Justice MAYNARD joins me in this dissenting opinion and reserves the right to file a separate dissenting opinion.

ALBRIGHT, Justice, concurring.

(Filed June 11, 2002)

I concur with the result articulated by the majority opinion. I write separately to address a disturbing trend in the manner in which this Court periodically chooses to present new points of law. While the majority opinion correctly decides the substantive legal matter, its pronouncements are framed within the context of a per curiam opinion and no new syllabus points were presented to formalize the ruling. As Justice Workman astutely observed in her dissent to *State v. Lopez*, 197 W.Va. 556, 476 S.E.2d 227 (1996),

This case portrays the increasing use of per curiam opinions to alter the law as it currently exists in West Virginia while declining to enunciate the change in a new syllabus point. It illustrates an evolving problem that this Court should correct. Although this is not the first example of this phenomenon, it is the one least justified. In the past some good reason has existed. It has occurred where there has been a "compromise" decision. It has occurred when the membership of the Court has been in a state of flux, with all the accompanying philosophical shifting, and a "temporary" court had the good judgment to recognize that it was not the time to make major policy changes in the law. None of those phenomenon are present here.

*Id.* at 569, 476 S.E.2d at 240 (Workman, dissenting).

In syllabus point two of *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001), this Court explained that "[t]his Court will use signed opinions when new points of law are announced and those points will be articulated through syllabus points as required by our state constitution."[1] Where such new points of law are not articulated through syllabus points for whatever reason, the statements of syllabus point three of *Walker* are applicable and support my assertion that per curiam opinions are authoritative statement of the law. Syllabus point three of *Walker* explains:

Per curiam opinions have precedential value as an application of settled principles

**2.** W.Va.Code § 17C–5A–2(p) (2000) (Repl.Vol.) obligates the Commissioner to find the following by a preponderance of the evidence before revoking an individual's license to operate a motor vehicle:

(1) The arresting law-enforcement officer had reasonable grounds to believe the person had been driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (2) the person was lawfully placed under arrest for an offense relating to driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (3) the person refused to submit to the secondary chemical test finally designated; and (4) the person had been given a written statement advising the person that the person's license to operate a motor vehicle in this state would be revoked for a period of at least one year and up to life if the person refused to submit to the test finally designated[.]

**3.** "Generally, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary." *State v. Allen*, 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999) (citations omitted).

**1.** Article VIII, section 4 of our state constitution provides, in pertinent part, that: "[I]t shall be the duty of the court to prepare a syllabus of the points adjudicated in each case in which an opinion is written and in which a majority of the justices thereof concurred, which shall be prefixed to the published report of the case."

of law to facts necessarily differing from those at issue in signed opinions. The value of a per curiam opinion arises in part from the guidance such decisions can provide to the lower courts regarding the proper application of the syllabus points of law relied upon to reach decisions in those cases.

Syllabus point four continues in that vein: "A per curiam opinion may be cited as support for a legal argument."

Justice McGraw incisively explained as follows in his concurrence to *Walker*: "Nor does a per curiam opinion's failure to formally include a newly-forged legal principle in its syllabus relegate such rule to the status of mere dictum." 210 W.Va. at 498, 558 S.E.2d at 298 (McGraw, concurring). "[A] new point of law cannot be ignored based simply upon the fact that it was articulated in a per curiam opinion." *Id.*

Consequently, while I agree with the conclusions of the competent majority opinion, I would clarify the import of the opinion by emphasizing that a new legal statement has the full force and effect of law, notwithstanding the fact that it is presented in the format of a per curiam opinion and is not formally articulated in a syllabus point. In conformity with the longstanding principle of this Court that we will apply the plain meaning of a statute, I believe that the majority opinion clearly stands for the proposition that where a statute requires that an accused be given written notice that refusal to submit to a chemical breath test "will" result in revocation of his license, this Court will strictly enforce the plain meaning of that statute.[2] The majority opinion conclusively establishes that the legislature's use, in West Virginia Code § 17C–5–7(a), of the term "will" is dispositive. In other words, "will" means "will," and this Court will apply the plain meaning of the statute.

The dissent raises another issue worthy of some response by introducing the concept that form should not be elevated over substance. In support of this proposition, the dissent quotes *Holstein v. Norandex, Inc.*, 194 W.Va. 727, 729 n. 2, 461 S.E.2d 473, 475 n. 2 (1995).[3] Indeed, I agree with the concept enunciated in the cited footnote of *Holstein*, a case in which there was an allegation that the appellant failed to comply with technical procedural rules for the designation of a record within a certain time period. Key to the Court's *Holstein* ruling, however, was that the appellant's alleged failure to comply with the procedural rule was determined to be harmless, with no showing of actual prejudice. Similarly, in *Talkington v. Barnhart*, 164 W.Va. 488, 264 S.E.2d 450 (1980), cited in *Holstein*, the issue was the plaintiffs' failure to comply with the procedural rule requiring them to notify the defendant that the trial transcript had been filed and made part of the record, and no actual prejudice was found. In *Talkington*, we explained that "[w]e will not sacrifice an appellant's substantial rights for rules that do not result in prejudice." *Id.* at 493, 264 S.E.2d at 453.

2. With specific reference to the "substantial compliance" issue, I am pleased that counsel for the Commissioner announced during oral argument that the pertinent forms now comply with the statutory requirements.

3. The full text of the cited footnote provides as follows:

The appellee contends that this appeal should be dismissed because the appellant failed to comply with Rule 73(a) of the West Virginia Rules of Civil Procedure and, more specifically, the appellant did not designate the record within thirty days of the lower court's dismissal of defendant Counts. We disagree for several reasons. First, the appellant did, in fact, comply with Rule 73(a) by filing his designation within the first thirty days available when he could lawfully file it in state court without violating 28 U.S.C § 1446(d), which provides that, upon removal of a state court civil action to federal court, "... the state court shall proceed no further unless and until the case is remanded." Second, assuming, arguendo, that 28 U.S.C. § 1446(d) is not applicable, the alleged failure to comply with Rule 73(a) is harmless, and appellees have shown no actual prejudice affecting their substantial rights. Finally, dismissal of this appeal for failure to timely designate the record, under these circumstances, would be a classic example of placing form over substance, a procedure historically criticized and routinely rejected by this Court. *See, e.g., Talkington v. Barnhart*, 164 W.Va. 488, 264 S.E.2d 450 (1980).

*Holstein*, 194 W.Va. at 729 n. 2, 461 S.E.2d at 475 n. 2.

The admonition against placing form over substance is certainly valuable in the investigation of whether technical procedural rules have been violated; the question thus would become whether the substantial rights of the parties have been affected by the procedural irregularity or oversight. In my opinion, however, that inquiry is constructive only in the evaluation of alleged technical procedural errors. The omission alleged in the present case rises above a mere procedural irregularity, and application of the concepts utilized in evaluations of purely procedural imperfections is improper and irrelevant. It is "our rules of civil procedure [which] seek to avoid emphasis of form over substance." *Butler's Discount Auto Sales, Inc. v. Roberts,* 172 W.Va. 83, 86, 303 S.E.2d 722, 725 (1983).[4] Our application of the plain and unambiguous meaning of a statute requiring written notification that certain conduct will result in revocation of the right to operate a motor vehicle should not succumb to such inapplicable and imprecise analysis.[5]

In its discussion of West Virginia Code § 17C–5–7(a), the dissent also overlooks an important component of the statutory requirement. The statute not only provides that the driver must be informed that his refusal to submit to the test will result in revocation of his license; the statute also provides that such notice must be in writing. The dissent essentially advocates judicial revision of legislative pronouncements, or at the very least judicial pardon for blatant violation of statutory requirements. The dissent justifies this approach by the application of a slippery slope standard of "substantial compliance" and exaltation of the procedurally-based principle that form should not rise above substance. Through that means, the dissent approves the failure to comply with two essential requirements of the statute: (1) giving the accused a proper explanation of the consequences of a refusal to submit to the test, and (2) giving that explanation in writing. In the defendant's case neither requirement was fulfilled.

Indeed, as this Court observed in *Rosier v. Garron,* 156 W.Va. 861, 199 S.E.2d 50 (1973), "the distinction between procedural rules and substantive rights is frequently illusory." *Id.* at 875, 199 S.E.2d at 58. This Court should not surrender to the confusion that such a distinction can generate. Purely technical procedural rules which do not affect the substantial rights of the parties are a completely

---

**4.** Rule 61 of the West Virginia Rules of Civil Procedure provides that technical procedural errors not affecting the substantial rights of parties are to be ignored:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

**5.** The string cites offered by the dissent readily illustrate my point; they deal primarily with issues of a strictly procedural technical nature such as filing a grievance, filing affidavits in opposition to a motion for summary judgment, publication in a newspaper, and other technical irregularities. In *State v. Valentine,* 208 W.Va. 513, 541 S.E.2d 603 (2000), discussed by the dissent in support of its substantial compliance theory, this Court applied the harmless error doctrine to resolve the matter, rather than engaging in a substantial compliance deliberation. In *In re Burks,* 206 W.Va. 429, 525 S.E.2d 310 (1999), also referenced by the majority, the procedure with which there was substantial compliance did not directly implicate the rights of the accused and dealt only with whether the officer mailed his statement to the Commissioner on time. *See also State ex rel. Clark v. Blue Cross Blue Shield of West Virginia, Inc.,* 195 W.Va. 537, 466 S.E.2d 388 (1995) (holding that strict compliance, rather than substantial compliance, would be adopted in insurance insolvency cases, the parameters of which were governed by statute); *Jones v. Tri–County Growers, Inc.,* 179 W.Va. 218, 366 S.E.2d 726 (1988) (holding that compliance with all requirements of Wage Payment and Collection Act was required and that substantial compliance was insufficient); *State ex rel. Browning v. Blankenship,* 154 W.Va. 253, 268, 175 S.E.2d 172, 181 (1970) (rejecting theory of substantial compliance with requirements related to governor's veto power over budgetary items, finding that "[t]he express provision of the Modem Budget Amendment here involved, which is plain and unambiguous and is mandatory in character, is not satisfied by substantial compliance but instead must be accorded full and literal compliance").

different animal from what we encounter in the present case. The statutory rules enunciated in West Virginia Code § 17C–5–7(a) constitute substantive rules designed to preserve essential individual rights. Applying notions of substantial compliance is simply improper.

As this Court candidly remarked in *Board of Church Extension v. Eads,* 159 W.Va. 943, 230 S.E.2d 911 (1976), "the legal reasoning process of courts is inherently result oriented." *Id.* at 953, 230 S.E.2d at 917.

> Notwithstanding protestations on the part of countless thousands of appellate judges during the course of numerous centuries, legal reasoning in complex cases inevitably works backward from the result to the rule rather than from the rule to the result. For example, "substantial compliance," "intention of the drafters," "clear and unambiguous," "unconscionability," and "constructive fraud" are all legal phrases which can be used selectively to arrive at any given result which suits the fancy of the court.

*Id.,* 230 S.E.2d at 917–18. The legal approach commonly labeled "substantial compliance" is thus just another of a myriad of legal instruments designed to justify a desired result. It is a component of the legal elasticity which must exist in order to fashion law and protect equities; yet its utilization must not be unbridled. It must not be the justification for outright derogation of a statute. As the majority should have stated explicitly in a syllabus point, a statute which requires a written statement advising an individual that refusal to submit to a test will result in revocation of his driving privileges must be strictly applied in accord with its plain meaning. Elusive concepts of law must not be invoked to justify a jurist's determination that violations of explicit and substantial statutory requirements should be condoned.

I am compelled to express one final point of disagreement with the dissent. My final point is that the existence of the ultimate right to challenge an initial suspension of driving privileges for failure to submit to the secondary breath test does not correct or diminish the effect of giving improper notice not complying with the statute. In the interim between the entry of an order preliminarily suspending one's license for failure to submit to the test—which may be entered in as little as 48 hours after the arrest—and the rendering of a decision upon the administrative hearing—which may be several weeks or even months after the arrest—the accused's license is suspended *without regard to whatever challenge the accused may offer at the hearing.* The "right" to present exculpatory evidence at that later hearing does not and cannot erase the effect of that suspension, no matter how convincing later exculpatory evidence may be. The suggestion in the dissent that failure to comply with the plainly worded statutory requirement ought to be excused by reason of the later right to such a hearing defies common sense.

Based upon the foregoing, I respectfully submit this concurring opinion.