# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

_____

No. 13-1180

_____

FILED

**September 24, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### PATRICIA S. REED, COMMISSIONER OF THE WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Petitioner Below, Petitioner

V.

### ROBIN J. RINER,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
Honorable Tod J. Kaufman, Judge
Civil Action No. 13-AA-69

**REVERSED AND REMANDED**

_____

Submitted:  September 16, 2015
Filed:  September 24, 2015

Patrick Morrisey
Attorney General
Elaine L. Skorich
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

Harley O. Wagner
The Wagner Law Firm
Martinsburg, West Virginia
Attorney for Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.    "'On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.' Syllabus Point 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996)." Syllabus point 1, *Miller v. Epling*, 229 W. Va. 574, 729 S.E.2d 896 (2012).

2.    "'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)." Syllabus point 1, *State v. Jarvis*, 199 W. Va. 635, 487 S.E.2d 293 (1997).

**Davis, Justice:**

This is an appeal brought by Petitioner Patricia S. Reed, Commissioner of the West Virginia Department of Motor Vehicles ("the DMV")[1], from an adverse judgment in the Circuit Court of Kanawha County. In its October 23, 2013, order, the circuit court affirmed an order issued by the Office of Administrative Hearings ("the OAH") reversing a one-year revocation of Respondent Robin J. Riner's ("Ms. Riner") drivers license for her failure to submit to a secondary chemical test.[2] The OAH reversed upon finding that the arresting officer failed to comply with the implied consent statute, West Virginia Code § 17C-5-7 (2010) (Supp. 2010).[3] The DMV herein contends that the circuit court erred by affirming the OAH's reversal of Ms. Riner's drivers license revocation on this basis. Upon our review of the parties' briefs and oral arguments, the appendix records designated for our consideration, and the pertinent authorities, we reverse and remand for the reinstatement of the revocation of Ms. Riner's drivers license.

---

[1]While this case was pending before the Court, Patricia S. Reed replaced Steven O. Dale as Commissioner of the West Virginia Division of Motor Vehicles. Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, the name of the current public officer has been substituted accordingly in this action.

[2]Ms. Riner's drivers license was also revoked for a period of six months for driving under the influence of alcohol, controlled substances, or drugs. This six-month revocation was upheld by the OAH. This portion of the OAH order has not been appealed and, therefore, is not addressed in this opinion.

[3]West Virginia Code § 17C-5-7 was amended in 2013, though the relevant portion of the statute was unchanged. *See* W.Va. Code § 17C-5-7 (2013) (Repl. Vol. 2013). Because the traffic stop at issue occurred in 2011, the 2010 version of the statute is applicable to the instant matter.

1

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

On June 23, 2011, Corporal J. Jones ("Corporal Jones") of the Berkeley County Sheriff's Department observed a vehicle driven by Ms. Riner cross the center line two times. Corporal Jones executed a traffic stop during which he smelled alcohol. At that time, Ms. Riner admitted that she had consumed one beer. Corporal Jones called for another officer to assist him, and Deputy A.T. Burns ("Deputy Burns"), also of the Berkeley County Sheriff's Department, came to the scene. Deputy Burns, the investigating officer, detected alcohol on Ms. Riner's breath and found that her eyes were bloodshot and that she was speaking quickly. He administered field sobriety tests and determined that she had failed the same. After administering a preliminary breath test ("PBT"),[4] he placed Ms. Riner under arrest for driving under the influence of alcohol, controlled substances, or drugs ("DUI") in violation of West Virginia Code § 17C-5-2 (2010) (Supp. 2010).[5]

Deputy Burns transported Ms. Riner to the Berkeley County Sheriff's Department where he read to her an implied consent statement. He also gave her a written copy of that statement, which provides as follows:

---

[4]Deputy Burns failed to present proof of his certification to operate the model of PBT administered, so the result of that test was not considered in subsequent proceedings.

[5]The relevant text of West Virginia Code § 17C-5-2(d) (2010) (Supp. 2010) provides that "[a]ny person who: (1) Drives a vehicle in this state while he or she: (A) Is under the influence of alcohol; . . . (2) Is guilty of a misdemeanor . . . ."

2

> Pursuant to state law (Chapter 17C, Article 5, Section 7) I am now directing you to take an approved secondary chemical test of your breath for the purpose of determining the alcoholic content of your blood. If you refuse to submit to this test, your privilege to operate a motor vehicle in this state will be revoked for a period of at least 45 days and up to life. If you refuse you will have fifteen minutes in which to change your mind after which time your refusal will be deemed final and the arresting officer will have no further duty to offer you this approved secondary chemical test.

Deputy Burns indicated on the written statement that Ms. Riner refused to sign her name. He then signed the implied consent statement where required.

On July 14, 2011, the DMV's Director of Driver Services sent an order of revocation to Ms. Riner. The order imposed a six-month revocation of her license to operate a motor vehicle in West Virginia for DUI and a one-year revocation resulting from her refusal to submit to the secondary chemical test. Ms. Riner appealed that order to the OAH, which conducted an administrative hearing on March 1, 2012. While providing sworn testimony before the OAH, Ms. Riner stated that, during the conversation in which Deputy Burns read the implied consent statement to her, he also told her three times that she did not have to take the test. She further testified that she "almost felt like he was telling [her] not to do it . . . ." In response, Deputy Burns testified that it was his practice to read and explain the implied consent statement, in addition to answering questions about that statement. He stated that he told people the secondary chemical test was their choice and they did not have to take it if they did not want to do so. He explained that he would not "grab their head and

force them [to submit to the test]." Following the hearing, the OAH entered its order affirming the revocation for DUI but reversing the revocation for refusing to submit to the secondary chemical test. As part of its findings, the OAH concluded that Deputy Burns failed to give Ms. Riner "an adequate oral warning of the consequences for refusing to submit to the secondary test . . . ."

The DMV appealed to the Circuit Court of Kanawha County only that portion of the OAH order reversing the one-year revocation of Ms. Riner's license based on her refusal to submit to the secondary chemical test. By order entered on October 23, 2013, the circuit court affirmed the OAH's final order. Following that ruling, the DMV filed the instant appeal from the circuit court's order.[6]

## II.

## STANDARD OF REVIEW

This Court previously has established the standards for our review of a circuit court's order deciding an administrative appeal as follows:

> "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the

---

[6]*See supra* note 2.

4

findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E. 2d 518 (1996).

Syl. pt. 1, *Miller v. Epling*, 229 W. Va. 574, 729 S.E.2d 896 (2012). We also note that,

> [u]pon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: [']( 1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[']

Syl. pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W. Va. Human Rights Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983). *Accord* Syl. pt. 2, *Dale v. Ciccone*, 233 W. Va. 652, 760 S.E.2d 466 (2014) (per curiam). With these standards in mind, we will address the issues herein raised.

## III.

## DISCUSSION

On appeal, the DMV asserts a single assignment of error: the circuit court and the OAH erred in creating a nonexistent requirement for compliance with West Virginia Code § 17C-5-7(a), the implied consent statute, as there is no requirement therein for an

5

"adequate oral warning." The DMV argues that the OAH, and the circuit court through its affirmation of the OAH's order, erred by turning the statements of Deputy Burns and Ms. Riner into a credibility issue in determining whether the oral warning given by Deputy Burns was adequate. In response, Ms. Riner contends that the officer went outside of the plain reading of the form by engaging in additional conversation with her; therefore, her refusal to submit to the secondary test was neither knowledgeable nor voluntary.

West Virginia Code § 17C-5-7(a) provides as follows:

> If any person under arrest as specified in section four [§ 17C-5-4][7] of this article refuses to submit to any secondary chemical test, the tests shall not be given: Provided, That prior to the refusal, the person is given an oral warning and a written statement advising him or her that his or her refusal to submit to the secondary test finally designated will result in the revocation of his or her license to operate a motor vehicle in this state for

_____

[7]The relevant language of West Virginia Code § 17C-5-4 (2010) (Supp. 2011) provides that

> [a]ny person who drives a motor vehicle in this state is considered to have given his or her consent by the operation of the motor vehicle to a preliminary breath analysis and a secondary chemical test of either his or her blood, breath or urine for the purposes of determining the alcoholic content of his or her blood. . . . Any person to whom a preliminary breath test is administered who is then arrested shall be given a written statement advising him or her that his or her refusal to submit to the secondary chemical test pursuant to subsection (d) of this section, will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least one year and up to life.

a period of at least forty-five days and up to life; and that after fifteen minutes following the warnings the refusal is considered final. The arresting officer after that period of time expires has no further duty to provide the person with an opportunity to take the secondary test. The officer shall, within forty-eight hours of the refusal, sign and submit to the Commissioner of Motor Vehicles a written statement of the officer that: (1) He or she had reasonable grounds to believe the person had been driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (2) the person was lawfully placed under arrest for an offense relating to driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (3) the person refused to submit to the secondary chemical test finally designated in the manner provided in section four of this article; and (4) the person was given a written statement advising him or her that his or her license to operate a motor vehicle in this state would be revoked for a period of at least forty-five days and up to life if he or she refused to submit to the secondary test finally designated in the manner provided in section four of this article. The signing of the statement required to be signed by this section constitutes an oath or affirmation by the person signing the statement that the statements contained in the statement are true and that any copy filed is a true copy. The statement shall contain upon its face a warning to the officer signing that to willfully sign a statement containing false information concerning any matter or thing, material or not material, is false swearing and is a misdemeanor. Upon receiving the statement the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state for the period prescribed by this section.[8]

(Footnotes added). Before we examine this statute, we note that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d

---

[8]Ms. Riner does not argue that Deputy Burns failed to comply with the requirement to submit this statement.

361 (1975). *See also the Coordinating Council for Indep. Living, Inc. v. Palmer*, 209 W. Va. 274, 281, 546 S.E.2d 454, 461 (2001) ("When interpreting a legislatively created law, we typically afford the statute a construction that is consistent with the Legislature's intent."). Further, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). *Accord* Syl. pt. 2, *Butcher v. Miller*, 212 W. Va. 13, 569 S.E.2d 89 (2002) (per curiam). However, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). *Accord* Syl. pt. 3, *Mace v. Mylan Pharm., Inc.*, 227 W. Va. 666, 714 S.E.2d 223 (2011).

In *Butcher*, this Court previously addressed the language of West Virginia Code § 17C-5-7(a) requiring the officer to inform the driver "that his refusal to submit to the secondary test finally designated *will* result in the revocation of his license to operate a motor vehicle in this state for a period of at least one year and up to life." *Butcher*, 212 W. Va. at 15, 569 S.E.2d at 91 (emphasis in original).[9] In that case, the Court found that the pertinent

---

[9]It should be noted that the author of this opinion dissented from the majority's decision in *Butcher v. Miller*, 212 W. Va. 13, 569 S.E.2d 89 (2002) (per curiam). However, *Butcher* involved an issue different from the one presently before the Court in the case *sub judice*. In *Butcher*, the Court invalidated an implied consent statement because the language the officer used to orally communicate the implied consent statement differed from the implied consent language required by West Virginia Code § 17C-5-7. *Butcher* at 17, 569 S.E.2d at 93. By contrast, in the instant case Ms. Riner does not contend that Deputy Burns

(continued...)

language of West Virginia Code § 17C-5-7(a) was clear and unambiguous. *Butcher*, 212 W Va. 17, 569 S.E.2d at 93. While that statute was amended between the time of the traffic stop at issue in *Butcher* and 2011, when Ms. Riner was involved in the traffic stop at issue herein, the language requiring that an officer inform the driver that his refusal to submit to the secondary test will result in the revocation of his license is identical. That statutory language remains clear and unambiguous.

As set forth in *Butcher*, under the statute, an officer making a DUI arrest must inform the arrestee that a refusal to submit to a chemical breath test will result in a license suspension. 212 W. Va. at 17, 569 S.E.2d at 93. The statute continues by requiring that the officer set forth the potential penalties for such refusal, both orally and by providing a written copy of that statement to the arrestee. *See* W. Va. Code §17C-5-7(a). Ms. Riner does not dispute that the officer complied with these duties. It is undisputed that Ms. Riner refused to submit to the secondary test. However, she contends that Deputy Burns's alleged statement that she did not have to take the test "almost" felt like he was telling her not to take the test.

In reversing Ms. Riner's revocation, the OAH observed a dispute of fact as to the extraneous statements made by Deputy Burns related to Ms. Riner's refusal of the

_____

[9](...continued)
deviated from the language set forth in the statute when he read the implied consent statement to her.

9

secondary chemical test. This was error insofar as no credibility determination was necessary in this instance.[10] West Virginia Code § 17C-5-7 does not require such a credibility determination, nor does it require that the arrestee's refusal be knowingly and intelligently made. *See In Re Matherly*, 177 W. Va. 507, 509, 354 S.E.2d 603, 605 (1987) ("*W. Va. Code* 17C-5-7 [1983] . . . does [not] require that the refusal be intelligently, knowingly and willingly made. . . . We will not engraft onto the statute a specific intent requirement where it is apparent that none was intended by the legislature."). The statute simply required that Deputy Burns read the implied consent statement to Ms. Riner and provide her with a copy of the same. As evidenced by both his testimony and his signature on the implied consent statement, Deputy Burns complied with those statutory duties. Further, Ms. Riner does not dispute that he read the required statement or that he provided a copy of that statement to her.

Ms. Riner's understanding of statements made by Deputy Burns is not within the officer's control, provided that the information given by Deputy Burns to Ms. Riner, as the arrestee, constitutes correct statements of law or are not contrary to law. The controlling facts in this case are that Deputy Burns both read and provided a written copy of the implied

---

[10]Assuming *arguendo* that Deputy Burns made the statement alleged by Ms. Riner, we find that the same is not inconsistent with West Virginia Code § 17C-5-7(a). Rather than simply evaluating whether Deputy Burns complied with the plain language of West Virginia Code § 17C-5-7 by informing Ms. Riner of her rights thereunder, the OAH erroneously considered Ms. Riner's interpretation of extraneous comments made by Deputy Burns to determine that his reading of the implied consent statement was inadequate.

10

consent statement required by law and that the alleged statement made by Deputy Burns was not contrary to West Virginia law. Consequently, we find that Deputy Burns fulfilled his statutory obligation to read and provide a written copy of the implied consent statement to Ms. Riner and that she refused to take the secondary chemical test. Therefore, the circuit court erred in upholding the OAH's decision reversing the revocation based upon that refusal.

## IV.

## CONCLUSION

For the reasons set forth in the body of this opinion, the October 23, 2013, order of the Circuit Court of Kanawha County is reversed to the extent that it affirmed the OAH's decision to reinstate Ms. Riner's drivers license despite her refusal to submit to the secondary chemical test. Finally, we remand for reinstatement of the revocation of Ms. Riner's drivers license.

Reversed and Remanded.